**TUIFAGU IOSEFA ETUALE, Appellant,**

v.

**AMERICAN SAMOA GOVERNMENT, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 08-02

April 12, 2004

Before KRUSE, Chief Justice, GOODWIN[*], Acting Associate Justice, TASHIMA,[**] Acting Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Appellant, Andrew Stave, Assistant Public Defender
For Appellee, John W. Cassell, Assistant Attorney General

OPINION

GOODWIN, Acting Associate Justice:

Tuifau Iosefa Etuale was convicted by a jury of burglary and sodomy upon his fifteen-year-old female cousin. He admitted entering the victim's home at night and engaging in sexual activity with her, but denied that he used force or threat of force. The victim and the Defendant both testified and both were vigorously cross-examined.

---

[*] Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of Interior.
[**] Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

The victim testified that on the night of July 4, 2001, she was asleep on a bed with her ten-year-old female cousin, in a room in which seven other family members were also sleeping. She testified that she awakened some time after midnight to find that someone had placed a hand over her mouth and eyes, and was holding her down on the bed. She soon recognized her cousin, Etuale, and saw a knife on the bed. She testified: "He said if I screamed or make noise, then no member of my family will ever see me again." The victim then described the sexual assault and said that afterward the Defendant left the room through the window through which he had apparently entered. The victim testified that she did not invite the Defendant to enter the house, and that she never consented to the sexual behavior.

The victim said that no member of the family was awakened, and that she told no one about the event for several weeks. She testified that after the assault, she saw Etuale every day and that he would renew his threats against her. The prosecution introduced evidence that some six weeks after the assault, the Defendant apologized to the victim and her aunt "for the ugly things that he did." However, the victim still did not tell the aunt that Etuale had sexually assaulted her. She told the aunt about the assault on August 25, 2001, and her aunt took her to the police station where the victim gave statements. These statements contained details that were inconsistent with some of her later testimony.

It was undisputed that friction between the victim's family and the Defendant's family culminated in an altercation that involved rock throwing and threats of violence followed by police intervention. The violent clash between the families was cited by the defense in its jury argument as motivation for the victim to falsely accuse Etuale of the crime charged.

Etuale's testimony, consistent with his own statements to the police, admitted that he had entered the room where the victim was sleeping and that he engaged in the behavior substantially as described by the victim. However, Etuale swore that she consented to everything that happened. He denied making any threat, or holding or using the knife in a threatening manner. The defense was allowed to develop fully the credibility questions in direct and cross-examination. The bad blood between the families was fully exploited as a possible motive for a false accusation. The jury nonetheless rejected Etuale's defense of consent, and believed the victim's version of the events.

During closing arguments, the prosecution stated that the victim's inconsistent statements were reasonable: "And one would expect that a child or anyone inexperienced in situations like that might well get details mixed up as she told this story over and over again, but she would never forget the essentials of the terror." Defense counsel attempted to

counter this statement by challenging the government's characterization of the victim as "inexperienced," and began discussing her prior sexual experiences. The court sustained the prosecution's objection, and advised the jury to disregard the challenged argument.

The motion for a new trial raised all the credibility questions that lurked in the two conflicting versions of the charged conduct, and challenged the rulings of the trial court that restricted final argument by defense counsel. The motion also challenged the sufficiency of the evidence. These same points were briefed and argued on appeal.

 The rulings by the trial court that restricted a part of the defense's closing argument to the jury were well within the discretion of the trial court, to prevent the discussion of irrelevant or inadmissible material. *State v. Cecotti*, 639 P.2d 243, 246 (Wash. App. 1982) ("Absent a showing of abuse resulting from the limitation in scope of the defense counsel argument, the trial court's rulings will be upheld.").

Etuale's argument that the evidence was insufficient to support his conviction is also unavailing. The jury's verdict is supported by substantial evidence. *See* 5 AM. JUR. 2D *Appellate Review* § 663; *In re Kelly W.*, 95 Cal. App. 4th 468, 471 (Cal. Ct. App. 2002).

AFFIRMED.

So ordered.